MAGGIE MEYER, PLAINTIFF, v. LEMBECK & BETZ EAGLE BREWING COMPANY, DEFENDANT

Submitted December 5, 1918—Decided June 5, 1919.

Although a landlord, who voluntarily makes repairs to a toilet upon leased premises, is liable to the tenant for injuries subsequently received by her as the direct result of negligence in making the repairs, liability is not established merely by proof of such negligence, coupled with evidence of injury to the tenant caused by a defective condition of the toilet. It must further be shown that the defect which produced the accident was that which the landlord undertook to repair; or that the negligence of the landlord in making the repairs produced the unsafe condition which caused the accident.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the rule, *D. Eugene Blankenhorn.*

*Contra, Alexander Simpson.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff was a tenant of the defendant company, the leased premises being an apartment located in Grove street, in the city of Jersey City. On the 26th of March, 1917, she was injured while cleaning up the toilet. The injury was caused by the fall of the water tank which was used for the flushing of the toilet; and her case was rested solely upon the averment that the defendant improperly, and without the use of reasonable care, had caused the tank to be unskillfully repaired and fastened, so that the same fell upon her.

It is conceded on the part of the plaintiff that, normally, the obligation to make repairs to the toilet rested upon the tenant, in the absence of any agreement on the part of the landlord to make them; and no attempt to prove the making of any such agreement was made. Her case rests upon the doctrine laid down by this court in *LaBrasca* v. *Hinchman*, 81 *N. J. L.* 367, which is that where a landlord undertakes to make repairs to leased premises, and performs the work so negligently that the tenant suffers damage by reason of such negligence, the landlord is liable for that damage, notwithstanding the fact that he was under no legal obligation to make them. This principle was approved by the Court of Errors and Appeals in the case of *Broame* v. *N. J. Conference*, 83 *Id.* 621. The case went to the jury upon this theory, and they rendered a verdict in favor of the plaintiff. The question is whether that verdict is supported by the testimony.

The only evidence upon the point was given by the plaintiff herself, and by one Dill, a witness called for the defendant, and is in full as follows:

(Plaintiff's testimony.)

"*Q.* Was the tank out of order before the date you were injured?

"*A.* It was fixed twice already while I was there.

"*Q.* Who fixed it?

"*A.* The plumber.

"*Q.* Who sent the plumber?

"*A.* The landlord sent the plumber—the agent, I mean—the agent.

"*Q.* Had you complained about the condition of the tank?

"*A.* Yes; twice already. It never was in good order.

"*Q.* How long before the accident was the plumber there?

"*A.* Five months, I guess.

"*Q.* Five months?

"*A.* Yes.    *    *    *    .

"*Q.* You say the tank had always been out of order since you were in the house?

"*A.* Yes; it was fixed twice already.

"*Q.* Fixed twice?

"*A.* Yes.

"*Q.* How was it out of order? What was the trouble with it?

"*A.* It was all the time leaking.

"*Q.* Leaking?

"*A.* Yes."

Mr. Dill was asked as follows:

"*Q.* Are you employed by Lembeck & Betz?

"*A.* Yes.

"*Q.* Do you have charge of the repairs of the properties?

"*A.* Yes.

"*Q.* Prior to March 26th, 1917, were there any requests for repairs made there?

"*A.* On February 1st, I believe, I got the first word.

"*Q.* And what was the nature of the trouble?

"*A.* They said the tank was leaking.

"*Q.* And what did you do?

"*A.* I 'phoned to Dodd's.

"*Q.* The plumber?

"*A.* Yes, on the same day.

"*Q.* Do you know whether the work was done?

"*A.* It was done on the second, according to his bill.

"*Q.* The following day?

"*A.* Yes.

"*Q.* Any other complaint between that time and March 26th, 1917?

"*A.* Not that I know of.

"*Q.* Would you know it if it had been made?

"*A.* I certainly would."

Considering this proof in the light most favorable to the plaintiff, the situation would seem to be this: The tank having been continuously out of order during her occupation of the premises, and complaint of that fact having been made by her to the defendant, the latter sent a plumber some five months before the accident to repair the leaks. The repairs not having been properly made, the defendant's agent, Dill, at the request of the plaintiff, again sent the plumber to stop the leaks. This second attempt at repair was made a little more than seven weeks prior to the day of the accident. What caused the accident was not shown; nor was there any evidence as to what the plumber did in his effort to stop them; nor was there anything to show that the negligent work of the plumber in making these repairs had any connection with the insecure condition of the tank. The doctrine of the LaBrasca case is that the landlord is liable for injuries to the tenant when he undertakes to make repairs, performs the work negligently, and injury comes to the tenant by reason of that negligence. The pith of the decision is in the last clause, namely, that the plaintiff's injury results from the landlord's negligence. No such conclusion can be drawn from the testimony above recited. Whether the fall of the tank was the result of the negligence of the plumber in making the repairs necessarily depends upon what he did, and how he did it. The burden rested upon the plaintiff to prove the causal connection between the negligence and the accident. The mere fact that the one followed the other is not sufficient. As was said by the Court of Errors and Appeals in *Suburban Electric Co.* v. *Nugent,* 58 *N. J. L.* 658, "In an action for personal injury, the plaintiff, in order to recover damages, must do more than show the possible responsibility of the defendant for the injury. In the absence of direct evidence he must show the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant, and exclude the

idea that it was due to a cause with which the defendant was unconnected." The doctrine thus laid down is, in our opinion, applicable to the case in hand.

The rule to show cause will be made absolute.